IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TYRONE GILL, N10443 | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 19-cv–01101-SMY |
| vs. | ) ) | |
| WARDEN SULLIVAN, DR. LARSON, DR. SIDDIQUI, JOHN TROST, DR. COE, N.P. MOLDENHAUER, WARDEN LASHBROOK, WARDEN KINK, WARDEN BROOKHART, DR. AHMED, STEVE S., DR. PITTMAN, JOHN/JANE DOE, and WEXFORD HEALTH SOURCES, INC. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Tyrone Gill, an inmate of the Illinois Department of Corrections ("IDOC") currently being held at Menard Correctional Center ("Menard"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Plaintiff's claims relate to an alleged lack of effective treatment for a variety of physical injuries and ailments during his time at Menard, Lawrence Correctional Center ("Lawrence") and Big Muddy River Correctional Center ("Big Muddy"). He seeks monetary damages.

1

Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner Complaints to filter out non-meritorious claims. See 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff makes the following allegations in the Complaint: Plaintiff began having severe back pain beginning in 2015 while at Stateville Correctional Center. (Doc. 1, p. 17). He injured his neck while lifting weights in 2016. (*Id.*, p. 12). On March 6, 2017, Plaintiff was assaulted in the shower while at Menard and injured his shoulder. (*Id.*, pp. 21-22).

At some unspecified point in 2017, Plaintiff saw Dr. Siddiqui and told him the various medications he had been given for pain (Tylenol, Naproxen, Ibuprofen and Robaxin) were not working and were causing stomach problems. (*Id.*, p. 14). Plaintiff saw Dr. Coe on April 12, 2017 who denied his request for an MRI on his shoulder. (*Id.*, p. 22). On June 6, 2017, Plaintiff saw Dr. Coe again and requested a referral for an epidural steroid injection and help with his pain, which Dr. Coe refused to order. (*Id.*, p. 18). Plaintiff was sent out twice in October 2017 for epidural steroid injections, which were only temporarily effective. (*Id.*, p. 15).

On January 6, 2018, Plaintiff was sent to St. Elizabeth's Hospital for an MRI on his shoulder which revealed a 4x4mm partial tear of his supraspinatus. (*Id.*, p. 23). He was given an injection in his rotator cuff and was ordered to have physical therapy. (*Id.*).

Plaintiff requested that Dr. Siddiqui send him to a neck and back specialist, which Siddiqui refused on the basis that Wexford would not approve it. (*Id.*). In June 2018, Siddiqui referred Plaintiff for neck surgery, but this was denied by Wexford. (*Id.*, p. 16). On July 5, 2018, Plaintiff was sent out to St. Elizabeth's Hospital for an MRI. (*Id.*, pp. 19-20). Dr. Siddiqui again referred him for surgery the same day, but there was no response. (*Id.*, p. 20). Dr. Siddiqui renewed his referral in August 2018 and it was again denied. (*Id.*, pp. 16, 20). Plaintiff was seen by Dr. Caldwell "many times" for his back who told him he needed back surgery but would not recommend it as it would only make the problem worse. (*Id.*, p 18).

Plaintiff was transferred to Lawrence in October 2018. (*Id.*, p. 16). He was seen by Nurse Practitioner Stove S, who prescribed Tramadol and physical therapy and put in an order for Plaintiff to see Dr. Ahmed. (*Id.*). Dr. Ahmed diagnosed arthritis and told him to return in two weeks. (*Id.*). Plaintiff asked Dr. Ahmed for a specialist referral and he refused. (*Id.*, p. 21). Two weeks later, Stove S. saw Plaintiff and made a referral to Wexford. (*Id*., pp. 17, 21).

At some point Plaintiff also saw Dr. Pittman who sent him out for another MRI and prescribed more physical therapy. (*Id.*, pp. 24-25). Plaintiff received the MRI on March 12, 2019. (*Id.*, p. 25).

Plaintiff asked Stove S. about moving to the medical unit. She stated the unit was full and refused Plaintiff's request to put him in for the move. (*Id.*, pp. 25-26). Stove S put Plaintiff in to see Dr. Pittman regarding the MRI results, but his appointment and requests for call passes were canceled. (*Id.*, p. 26). He saw Dr. Pittman on May 2, 2019. She said she would put him in for surgery and performed physical therapy on him which exacerbated the issues. (*Id.*). Plaintiff subsequently put in a number of call slips and was seen by a nurse but was not seen by a doctor until he was transferred to Big Muddy. (*Id.*, pp. 27-29).

On July 29, 2019, Plaintiff saw Dr. Larson at Big Muddy. (*Id.*, p. 30). Dr. Larson lowered Plaintiff's dose of Tylenol #3 (acetaminophen with codeine) then ceased it entirely the next day. (*Id.*, pp. 30-31). Plaintiff received no care for withdrawal symptoms. (*Id.*, pp. 31-32). On August 27, 2019, Plaintiff saw Dr. Larson for an ingrown toenail but he refused to address Plaintiff's neck and back pain. (*Id.*, p. 34). Dr. Larson rescheduled Plaintiff to go to an outside neck and back specialist. He had missed his previous appointment due to not wanting to be put in a certain type of restraint. (*Id.*, pp. 34-35).

Plaintiff saw John Doe, a Physician Assistant, on September 11, 2019. (*Id.*, p. 35). He asked Doe to address his back pain and reorder his pain medication but Doe only discussed a lab result with him and renewed his blood pressure medication and Nasacort. (*Id.*). Plaintiff saw Doe again on September 17, 2019 who reordered Plaintiff's pain medication but refused to refer him to the doctor or an outside specialist. (*Id.*, p. 36).

Dr. Larson saw Plaintiff again on September 27, 2019 and refused Plaintiff's request to see outside specialists for his back, neck and shoulder. (*Id.*, p. 37). Dr. Larson also refused his request for a back brace on the grounds that he did not believe they were effective. (*Id.*).

At various points, Plaintiff has sent letters to Wardens Lashbrook, Brookhart, Kink and Sullivan regarding his medical care but did not receive any answers. (*Id.*, pp. 15, 21, 23, 24, 30 and 34-35). He also spoke with Brookhart in person but received no relief. (*Id.*, p. 27).

Doctors Siddiqui, Caldwell, Coe and Moldenhauer all refused to send Plaintiff to see a specialist based on the fact that Wexford would not approve it. (*Id.*, p. 17). Wexford had a policy of denying adequate medical care in order to cut costs. (*Id.*, p. 15-16). While at Lawrence, Plaintiff also complained to Kink and Brookhart that he was denied care by Wexford.

Based on the allegations of the Complaint, the Court finds it convenient to organize this *pro se* action into the following Counts:

> **Count 1:** **Eighth Amendment claim against Siddiqui, Moldenhauer, Caldwell, Lashbrook, Coe and Wexford for deliberate indifference to a serious medical need while at Menard.**
>
> **Count 2:** **Eighth Amendment claim against Kink, Brookhart, Ahmed, Pittman, Stove S. and Wexford for deliberate indifference to a serious medical need while at Lawrence.**
>
> **Count 3:** **Eighth Amendment claim against Sullivan, Larson and John Doe for deliberate indifference to a serious medical need while at Big Muddy.**

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

## Severance

As an initial matter, the Court has determined that Plaintiff's claims are improperly joined in a single action. See *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). The claims fall into two distinct groups: (1) **COUNTS 1 and 2** arising from denial of medical care at Menard and Lawrence at least partially tied to an alleged Wexford policy of refusing outside referrals and services; and (2) **COUNT 3** arising from Plaintiff's alleged mistreatment at Big Muddy. These groups of claims involve different defendants and separate transactions or occurrences. Therefore, the Court will exercise its discretion and sever Count 3 against Sullivan, Larson and John Doe into a separate lawsuit with a newly-assigned case number. *See* FED. R. CIV. P. 18, 20, and 21. *See also Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th

---

[1] See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

Cir. 2011); *George v. Smith*, 507 F.3d at 607. Count 3 will be screened pursuant to § 1915A in the newly-severed case. As a result, the claims remaining in this case are Counts 1 and 2.

## Discussion

Plaintiff adequately alleges deliberate indifference to his medical conditions and chronic pain against Dr. Siddiqui, Dr. Moldenhauer, Dr. Coe, Dr. Caldwell, Brookhart, Dr. Pittman, Dr. Ahmed, Lashbrook, Kink, Stove S. and Wexford. However, he has not pled viable claims against Dr. Trost as liability requires personal involvement in or personal responsibility for the deprivation of a constitutional right. *Knight v. Wiseman*, 590 F.3d 458, 462-63 (7th Cir. 2009) (citation omitted). It appears that Dr. Trost's only involvement is that he was named on a form as a referral by a third party outside hospital. (Doc. 1, p. 22). There is no indication he knew there was a risk to Plaintiff's health. As such, Plaintiff's claims will be dismissed as to Dr. Trost.

## Motions to Appoint or Recruit Counsel

Plaintiff has filed a Motion to Appoint Counsel (Doc. 2) and a Motion for Recruitment of Counsel (Doc. 3). However, the Court's authority under 28 U.S.C. § 1915 to request an attorney is limited to indigent parties. 28 U.S.C. § 1915(e)(1). Plaintiff is not proceeding *in forma pauperis* and has given no indication that he is indigent. Therefore, Plaintiff's Motions are **DENIED without prejudice**.

## Disposition

**COUNT 3** against Sullivan, Larson and John Doe is **SEVERED** into a new case which shall be captioned: **TYRONE GILL, Plaintiff vs. WARDEN SULLIVAN, DR. LARSON and JOHN DOE, Defendants**.

The Clerk is **DIRECTED** to file the following documents in the newly-severed case:

1) The Complaint (Doc. 1); and
2) This Memorandum and Order Severing Case.

**IT IS ORDERED** that all claims against **DR. TROST** are **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Sullivan, Larson, Doe and Trost as parties in CM/ECF.

The Clerk of Court shall prepare for Defendants Siddiqui, Moldenhauer, Coe, Caldwell, Brookhart, Pittman, Ahmed, Lashbrook, Kink, Stove S. and Wexford.: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  March 16, 2020**

/s/ Staci M. Yandle
**STACI M. YANDLE
U.S. District Judge**

### Notice

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint.  After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint.  It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more.  When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures.  Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature.  **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**